IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-419-FL

| | | |
|---|---|---|
| DENNIS ANTHONY JONES and<br>VIDER CYNTHIA HOUSE JONES,<br><br>Appellants,<br><br>v.<br><br>BRANCH BANKING & TRUST COMPANY,<br><br>Appellee.<br><br>IN RE:<br><br>DENNIS ANTHONY JONES and<br>VIDER CYNTHIA HOUSE JONES,<br><br>Debtors.<br>Case No. 05-07958-8-RDD | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter is before the court on appeal by debtors Dennis and Vider Jones ("appellants") from an order of the United States Bankruptcy Court dated July 28, 2009. Notice of appeal was filed on August 6, 2009, pursuant to 28 U.S.C. § 158(a), within the time period allotted by Fed. R. Bankr. P. 8002. The appeal has been fully briefed, and the matter is now ripe for decision. For the reasons that follow, the decision below is affirmed.

## BACKGROUND

Appellants filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on September 30, 2005.[1] The petition named appellee as a secured creditor with a purchase-money

---

[1] The United States Bankruptcy Code is located at Title 11 of the United States Code. Except where otherwise noted, all statutory references herein are to Title 11 of the United States Code.

lien against a 2005 Chrysler Pacifica Touring Wagon ("Pacifica"), which had been purchased two months earlier. Appellants' chapter 13 plan, which proposed a 37-month repayment period, elected to continue to make payments directly to appellee outside the plan.[2] The plan stated that any arrearages were to be paid to appellee within the plan. At the time of their petition, however, appellants were current on their payments to appellee.

On January 1, 2006, the bankruptcy court approved appellants' proposed chapter 13 plan. Appellee, to whom notice had been served, did not file objection or a proof of claim. After appellants completed their plan in September 2008, the bankruptcy court granted them a discharge pursuant to § 1328(a). Following the entry of discharge, appellants surrendered the Pacifica to appellee, who resold it for substantially less than the balance due on the contract. Appellee thereafter attempted to collect the deficiency balance from appellants.[3]

On February 18, 2009, appellants moved the bankruptcy court to reopen their chapter 13 case so that they could file a motion for sanctions. The bankruptcy court allowed the motion to reopen, and appellants thereafter filed their motion for sanctions on April 8, 2009. The motion did not ask for monetary sanctions against appellee, but asked the bankruptcy court to determine whether appellee's claim had been discharged by the resolution of appellant's chapter 13 plan. Appellee responded on April 21, 2009.

Following hearing, the bankruptcy court entered an order denying appellants' motion for sanctions on July 28, 2009. In re Jones, No. 05-07958-8-RDD, 2009 WL 2253263 (Bankr. E.D.N.C.

---

[2] The purchase price of the Pacifica was financed through a retail installment contract providing for repayment over sixty-six (66) months, with the first installment due August 26, 2005 and the final installment due January 26, 2011. The chapter 13 plan repayment period, by contrast, ended in September 2008.

[3] The resale of the Pacifica, after deduction of costs and fees, left a deficiency balance of $13,969.86.

2

July 28, 2009). In the order, the bankruptcy court held that the chapter 13 plan had "provided for" appellee's claim, and as such would ordinarily be subject to discharge under § 1328(a). The bankruptcy court went on to hold, however, that the claim involved a long-term debt, as that term is defined in § 1322(b)(5), which is specifically excepted from discharge pursuant to § 1322(a)(1).

Appellants timely filed notice of appeal on August 6, 2009, arguing that the bankruptcy court erred in holding that appellee's claim was not discharged. Appellants contend that the chapter 13 plan did not provide for the "curing" of any pre-petition default on the debt, and as such is not governed by § 1322(b)(5). Appellants were current on their payments to appellee upon filing the chapter 13 petition, and as such there were no arrearages to cure. In response, appellee argues that the plan does provide for curing of default, even though no arrearage actually existed at the time of the petition. It also offers two rationales for upholding the order that were not offered by the bankruptcy court itself: (1) a plan need not provide for the payment of arrears to be a long-term debt under § 1322(b)(5); and (2) its claim is not "provided for" by the plan as required by § 1328(a).

## DISCUSSION

A.    Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review the bankruptcy court's order. "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Findings of fact are reviewed for clear error, and questions of law are reviewed *de novo*. Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996); see also Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and

3

due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

B.      Analysis

Upon completion of all payments under the chapter 13 plan, a debtor is granted "a discharge of all debts provided for by the plan . . . except any debt . . . provided for under section 1322(b)(5)." 11 U.S.C. § 1328(a)(1). Therefore, determining whether the debt to appellee was discharged is a two-step process. The court first must ask whether the debt was provided for in the chapter 13 plan. If not, the debt is not discharged. If so, the debt is court must go on to ask whether it was a long-term debt under § 1322(b)(5). If so, the debt is excepted from discharge under § 1328(a)(1). Otherwise, the debt is discharged under § 1328.

1.      The Debt Was Provided For Under § 1328

The Supreme Court has stated that "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." Rake v. Wade, 508 U.S. 464, 473 (1993) (second alteration in original). Although it was dealing with a section of the bankruptcy code not at issue in this case, the court went on to describe § 1328 in dicta, stating: "As used in § 1328(a), that phrase ['provided for by the plan'] is commonly understood to mean that a plan 'makes a provision' for, 'deals with,' or even 'refers to' a claim." Id. at 474; see also In re Deutchman, 192 F.3d 457, 461 (4th Cir. 1999) (citing Rake's definition of "provided for" in the § 1328 context to uphold its own interpretation of "provided for" in § 1327(c)).

In the instant case, the debt to appellee was "provided for" by the plan. As the bankruptcy court noted, the proposed and confirmed plan identified appellee by name, and called for monthly payments to appellee to be made outside the plan and arrearages to be paid inside the plan. As such,

4

the plan referred to and made provision for appellee's claim, which was thus "provided for" under § 1328. The debt is therefore presumptively dischargeable, unless § 1322(b)(5) applies.

2.  The Debt Is Nondischargeable Under § 1322(b)(5)

As previously noted, a debt provided for under § 1322(b)(5) is not discharged under § 1328(a)(1); see also Rake, 508 U.S. at 474-75. Under § 1322(b)(5), "the plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). The question presented for the court in the instant case is whether § 1328(a)(1)'s reference to § 1322(b)(5) applies where the plan is structured in such a way as to provide for the maintenance of payments and the curing of arrearages on a long-term debt even though no default exists at the time of the petition.[4]

A similar question faced the Bankruptcy Court of the Eastern District of Virginia in In re Delauder, 189 B.R. 639 (Bankr. E.D. Va. 1995). The issue in Delauder was "whether [a] debtor may directly pay an undersecured automobile loan in full outside the plan when unsecured creditors are being compromised [by being paid within the plan]." Id. at 640. In deciding this issue, the court was required to determine whether "the debtor's plan properly treat[ed] the [automobile loan] as a long-term debt under § 1322(b)(5)" even though "[t]he debtor [was] current on his car payments." Id. at 641. In finding the plan proper, the court stated:

> [N]otwithstanding the reference in § 1322(b)(5) to the "curing of any default," nothing in the statutory language suggests that the provision is restricted to

---

[4] It is beyond dispute that the plan provided for "maintenance of payments while the case [was] pending on [apellee's] . . . secured claim" and that "the last payment [was] due after the date on which the final payment under the plan is due.". As previously mentioned, the final installment to appellee was due January 26, 2011 while the chapter 13 plan repayment period ended in September 2008.

5

> circumstances where there is an existing default, and the court concludes that the provision permits the "maintenance of payments while the case is pending" on any debt where the final payment is due after the last payment under the plan even in the absence of default.

Id. at 644.

Although this court is not bound by the decision in Delauder, the reasoning of that case is persuasive. Section 1322(b)(5) "permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances, and may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan." Collier on Bankruptcy ¶ 1322.09 (15th ed. rev.). The section also provides for payment of pre-petition arrearages to ensure that the parties' original agreement is given effect if the debtor decides to take advantage of the longer repayment period. See In re Litton, 330 F.3d 636, 644 (4th Cir. 2003) ("A 'cure' merely reinstates a debt to its pre-default position, or returns the debtor and creditor to their respective positions before the default."). There is therefore no principled basis for preventing a debtor from taking advantage of maintaining payments on a long-term debt under § 1322(b)(5) merely because the debtor has not defaulted, because the original agreement can be given effect without resort to a cure. A debtor should not be penalized for failing to default.

Although Delauder dealt with plan confirmation and a debtor's ability to take advantage of § 1322(b)(5), the same principles dictate the result in the present § 1322(a)(1) context. Appellants here elected to maintain monthly payments on the long-term debt to appellee, presumably to take advantage of the longer repayment period. Having structured their plan in a way that takes advantage of § 1322(b)(5), they cannot now disclaim the effects of this decision at the conclusion of the plan.

The court holds that appellee's claim on the long-term debt for the Pacifica is not discharged simply because appellants were current on their payments at the time of the petition.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED. The clerk is directed to close the case.

SO ORDERED, this the 9th day of February, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge